IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| 4DD HOLDINGS, LLC; and <br> T4 DATA GROUP, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | : <br> : <br> : <br> : <br> : Case No.: 15-945 C <br> : <br> : <br> : <br> : <br> : |

## FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiffs 4DD Holdings, LLC ("4DD") and T4 Data Group, LLC ("T4"), by and through their counsel, hereby allege as follows:

### NATURE OF THE CASE

1. The United States of America ("United States" or "Government") has infringed, and continues to infringe, the copyrights of Plaintiffs by cloning, copying, reproducing, creating derivative works of, distributing, installing, and otherwise deploying Plaintiffs' proprietary software program—TETRA® Healthcare Federator ("TETRA")—on servers and other computing devices with thousands of processor cores for which it has not purchased licenses. TETRA is a breakthrough software technology that, among other functions, allows healthcare data systems and related technologies in disparate geographic locations to communicate and transfer patient histories and other information to locations where they are needed. The United States (acting through Tricare Management Activity ("TMA"), under the authority of the Assistant Secretary of Defense, Health Affairs) purchased licenses to use TETRA on 64 processor cores (each, a "TETRA Processor Core License" and, collectively with all other such licenses, "TETRA Processor Core Licenses") from an authorized reseller in September 2013. However, the United States and/or one

1

or more contractors acting for it and with its authorization and consent circumvented Plaintiffs' installation-monitoring and/or tracking processes, and cloned, copied, reproduced, created derivative works of, distributed, installed, and otherwise deployed TETRA, which actions are in direct violation of Plaintiffs' exclusive rights to its copyright in TETRA under 17 U.S.C. § 106 and 4DD's End User License Agreement ("EULA"), to which the United States was obligated to adhere. The United States and/or its contractor(s) also deployed TETRA in servers and other computing devices in excess of the 64 processor cores permitted by contract. When 4DD and its reseller confronted the United States with evidence of such unauthorized over-deployments, representatives of the Government at the successor to TMA, the Defense Health Agency (the "DHA"), fraudulently concealed the extent of the Government's copyright infringement by affirmatively and falsely stating that it and/or its contractor(s) had made only 168 unauthorized installations of TETRA. To further fraudulently conceal the true extent of the Government's copyright infringement, the DHA also hastily rewrote, at the last minute, the specifications of a related multibillion dollar contract to exclude the use of TETRA in performing major data-integration functions under that contract. Despite the United States' efforts to fraudulently conceal its unlawful actions, Plaintiffs eventually discovered that the United States and its contractor(s) had engaged in illegal cloning, copying, reproduction, creation of derivative works, and distribution, and had installed TETRA on servers and other computing devices, comprising at least several thousand processor cores, with a list price of $24,000 per processor core license and a market value in excess of that amount. Plaintiffs bring this action to establish definitively the true extent of the United States and its contractor(s)'s wrongful concealment and to recover the full measure of damages that Plaintiffs have suffered from the theft of their intellectual property.

**PARTIES**

2. Plaintiff 4DD Holdings, LLC, d/b/a 4DD Software, is a Delaware limited liability company with its headquarters in McLean, Virginia. 4DD is a Marine-veteran-owned business that creates and develops high-technology software products for licensing to both government and commercial customers. 4DD's principal product—TETRA (along with derivative products based upon TETRA)—is proprietary software and related technology that is used for purposes of, among other things, achieving large-scale and complex data interoperability and integration solutions. TETRA has been identified as a breakthrough software product and technology in this field.

3. Plaintiff T4 Data Group, LLC, is a Delaware limited liability company with offices in McLean, Virginia. T4 is a wholly owned subsidiary of 4DD Holdings, LLC.

4. Defendant is the United States of America, including but not limited to the Defense Health Agency, and its contract officers, directors, engineers, product directors, employees, representatives, and officials.

**JURISDICTION**

5. The Court has exclusive jurisdiction over this civil action as it arises under the Copyright Laws of the United States, in particular 28 U.S.C. § 1498(b), which is implicated "whenever the copyright in any work protected under the copyright laws of the United States [is] infringed by the United States, by a corporation owned or controlled by the United States, or by a contractor, subcontractor, or any person, firm, or corporation acting for the Government and with the authorization or consent of the Government." Section 1498(b) also provides that "the exclusive action which may be brought for" such infringement "shall be an action by the copyright owner against the United States in the Court of Federal Claims."

**FACTUAL BACKGROUND**

6.     As has been widely publicized, there is a lack of standardization, integration, and sharing of health records among the Department of Defense ("DoD"), Department of Veterans Affairs (the "VA"), and private medical providers. Simply put, electronic medical records stored at one location cannot be comprehensively shared with other locations (even within the DoD or VA systems) because the databases are unable to adequately communicate and inter-operate electronically with one another, an unfortunate artifact of the way these databases were created and have evolved over time. This failure has caused many active-duty service members and veterans to suffer needlessly from a lack of sufficient and well-deserved coordinated medical care.

7.     The United States Congress enacted legislation that forced the DoD and VA to integrate the sharing of active-duty and veteran-patients' medical records. To satisfy Congress's mandates, the Government (acting through its contractor at the time, Systems Made Simple, Inc. ("SMS")), conducted an Analysis of Alternatives ("AoA") in the summer of 2013 that was designed to evaluate the technical capabilities and price of several possible software- and technology-based solutions to the data integration issue. A goal of the AoA was to identify software that could facilitate the interoperable sharing of disparate electronic health-record systems in a cost-effective manner.

8.     The AoA process officially selected TETRA and identified it as the key data integration technology for, and the best solution to, the Government's interoperability requirements described above. In the AoA testing process, TETRA obtained a nearly-perfect test score in every measurement in the functional requirements category (99.59% overall) and a score of 100% in the non-functional requirements category.

A. **The Unauthorized Uses and Over-Deployments of TETRA**

9. In September 2013, TMA decided to purchase 64 TETRA Processor Core Licenses and 50 TETRA Studio seat licenses. The Government did not purchase these licenses directly from 4DD, but instead purchased them from immixTechnology, Inc. ("Immix"), an authorized reseller of TETRA Processor Core Licenses that was also a qualified vendor for the Government.

10. Immix and the United States entered into a License Agreement for the use of TETRA on September 26, 2013 ("Immix Contract 1"), which included 4DD's EULA as a component to which the Government became legally bound. Immix Contract 1 specifies that the United States could install and use TETRA on no more than 64 processor cores within the United States' servers and other computing devices. The TETRA Processor Core Licenses that the United States purchased were specific to the particular machines on which TETRA was installed. Stated alternatively, the licenses did not "float" to other machines or cores; once TETRA was installed on a particular server or other computing device, it was not permissible under the TETRA Processor Core Licenses to transfer such installation to another server, computing device, or core. Immix Contract 1 further provided for annual software maintenance services for TETRA ("Maintenance"). The United States paid Immix for the software and Maintenance included in Immix Contract 1.

11. As a further part of Immix Contract 1, the United States affirmed in writing that it and the contractor(s) working on its behalf would be legally bound and abide by all of the terms of 4DD's EULA. The EULA, among other things, provides that:

  a. TETRA is protected by copyright laws and international copyright treaties, as well as other intellectual property laws and treaties;

  b. 4DD is the copyright owner of TETRA;

    c.  the End User (i.e, the United States) is responsible for the actions of its third-party contractors;

    d.  the End User (i.e, the United States) is permitted to make only one single copy of the TETRA software product, which shall be used solely for back-up purposes;

    e.  the End User (i.e, the United States) is prohibited from copying and distributing TETRA to third parties;

    f.  the End User (i.e, the United States) is expressly prohibited from disclosing to third parties any of the valuable trade secrets contained or embodied in TETRA for competitive purposes or any other purposes, which trade secrets include, without limitation, the functionality, flow-charts, code schematics, capabilities, and/or architectural design of, or related to, TETRA; and

    g.  the End User (i.e, the United States) acknowledges that TETRA, including, without limitation, its structure, organization, and source code, constitutes the "valuable intellectual property" of 4DD, and the End User (i.e, the United States) is expressly prohibited from modifying, adapting, altering, translating, or creating derivative works from TETRA or otherwise engaging in any actions that constitute the unauthorized use of TETRA or that violate the EULA.

12.    The Government and its contractor(s) installed TETRA on numerous servers and other computing devices. Immix and Plaintiffs later learned that TETRA was installed on more than the 64 processor cores for which the TETRA Processor Core Licenses were purchased under Immix Contract 1. These additional installations were neither authorized by 4DD nor purchased by the Government. Upon information and belief, the Government and its contractor(s) over-installed other TETRA software, such as TETRA Studio®, as well.

13.    In early 2014, Plaintiffs began to suspect that the Government and its contractor(s) had over-deployed TETRA, and 4DD advised the Government's contractor and systems integrator, SMS, and the DHA of their suspicions. The DHA professed an intention to perform a proper accounting to 4DD of the TETRA over-installations, but then failed to do so. Finally, in December 2014, the DHA admitted that the Government and its contractor(s) had deployed

TETRA beyond the 64 TETRA Processor Core Licenses permitted under Immix Contract 1. DoD representatives affirmatively and falsely represented that the Government and its contractor(s) had installed TETRA onto a total of 232 processing cores (64 pursuant to Immix Contract 1 and an additional 168 unauthorized installations). The United States made a payment to Immix for the additional 168 installations in April 2015 ("Immix Contract 2").

14. Several months later, Plaintiffs learned that the Government had fraudulently concealed the immense magnitude of its unauthorized over-deployment and improper use of TETRA. Specifically, Plaintiffs learned that the Government and its contractor(s) had circumvented the licensing mechanisms of TETRA by improperly cloning, copying, reproducing, creating derivative works of, distributing, installing, and otherwise deploying TETRA. This was a violation of both 17 U.S.C. § 106 and the EULA that comprised part of Immix Contract 1. Plaintiffs further learned that the Government and its contractor(s) had distributed and installed, and upon information and belief are still using, the illegally copied TETRA software on at least several thousand additional processor cores within the United States' servers and other computing devices, including, but not limited to, those located at a minimum of eleven DoD development data centers, including, without limitation, Development Test Centers ("DTC"). The per-processor-core license list-price is $24,000, and the market value of each such license is in excess of that amount.

B.     **Improper Removal of TETRA as an RFP Specification**

15. In August 2014, the DHA (through the Defense Medical Information Exchange ("DMIX") project) issued a Request for Proposal ("RFP") for "Systems Engineering Support Services" (the "DMIX Contract") to identify the best systems integrator to fulfill the DMIX mission, which states, in part, as follows:

> Acquire and deliver a cost-effective infrastructure and data interoperability
> capability to securely and reliably exchange standardized, normalized, and

> correlated health data with all partners through standard data / information exchange mechanisms.

The RFP specified TETRA as a mandatory and critical software component to be used for integrating the subject health care databases and systems to:

> …acquire a solution to modernize the clinical Electronic Health Record Systems (EHRS) within each Service Department and to provide clinicians and patients the best integrated health care capability, including state-of-the-art clinical decision support and analytics…[and to] acquire a Health Information Exchange (HIE) capability that provides seamless sharing of standardized health care data between DoD and VA.

16. On November 13, 2014, just one day after the final RFP submission deadline, DHA representatives informed 4DD that TETRA would not be utilized under the DMIX contract resulting from the RFP. DHA personnel improperly changed or ignored the RFP's specifications because they knew that 4DD and, by now, Immix were pressing the Government and its contractor(s) to account for the unlicensed overuses of TETRA. The change in, or lack of adherence to, the RFP specifications was made by the Government in bad faith and was intended to conceal from 4DD the Government's massive and illegal over-deployment of TETRA and was part and parcel of an attempt to fraudulently conceal the illegal distribution, cloning, copying, reproduction, and/or creation of derivative works that made such unauthorized uses and over-deployment possible.

17. The purpose of the DMIX project as quoted by the DHA is to "[p]rovide the foundation to fully align with (DHMSM)"—the Defense Health Management Systems Modernization project ("DHMSM")—and support "the exchange of standardized health data among DoD, VA, other federal Agencies, and private sector providers." According to the DHA, the mission of the DHMSM project is to "competitively acquire, test, deliver, and successfully

transition to a state-of-the-market electronic health record (EHR) system." TETRA was identified as a mandatory and critical software component for the success of DMIX and DHMSM.

18.     The DHMSM project went to a single bidder on July 29, 2015 at a stated value of several billion dollars over multiple years. Given the size, scope of use, and unique system requirements of the DoD, it was reasonably expected that the United States would have purchased approximately $1.5 billion of TETRA Processor Core Licenses for the full deployment of DMIX/DHMSM plus another $3.5 billion in ancillary services, such as Maintenance, as part of the 10 year DHMSM project. Therefore, the DHA's actions undertaken in furtherance of its fraudulent concealment scheme have cost Plaintiffs billions of dollars in licensing fees and related Maintenance revenues.

## COUNT I
### (Copyright Infringement — 17 U.S.C. §§ 106, 504 and 28 U.S.C. § 1498(b))

19.     Plaintiffs incorporate by reference all the allegations set forth in paragraphs 1 to 18 as if fully stated herein.

20.     At a substantial investment of time, effort, and expense, 4DD created, developed, tested, and perfected its TETRA software. TETRA is an original work of authorship, expressed in words, numbers, and/or other verbal or numerical symbols or indicia.

21.     As the creator and author of TETRA, Plaintiffs own the copyright in this software, and its copyright vested upon the software's creation. 4DD was awarded a copyright registration for TETRA by the Register of Copyrights of the United States of America as a published non-dramatic literary work in the category of "computer programs." Plaintiffs continue to own all rights, title, and interest in and to the TETRA software, and Plaintiffs have the full and exclusive right to bring suit to enforce such copyright and recover for infringement.

22.     Cloning and other unauthorized copying and distribution of a copyrighted work and creation of derivative works violates a copyright owner's exclusive rights "to reproduce the copyrighted work in copies," "to prepare derivative works based upon the copyrighted work," and "to distribute copies . . . of the copyrighted work to the public." 17 U.S.C. § 106. By unlawfully distributing, cloning, preparing derivative works of, and otherwise improperly copying, installing, and using TETRA beyond the installations for which it purchased licenses, the United States has infringed, and continues to infringe upon and violate, Plaintiffs' exclusive rights.

23.     The United States knew or should have known that it was required to obtain a license for cloning, copying, reproducing, creating derivative works from, distributing, installing, and otherwise deploying TETRA beyond the installations for which it purchased licenses.

24.     The United States' acts of infringement were, and continue to be, willful, intentional, and purposeful as evidenced, *inter alia*, by its fraudulent concealment of the true extent of its infringement.

25.     As a direct and proximate result of the foregoing infringements, Plaintiffs have suffered, and continue to suffer, substantial damages to their business and to the value of their copyright rights in TETRA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for a judgment against the United States, granting Plaintiffs the following relief:

A.      That this Court adjudge and decree that the United States and/or contractor(s) acting on its behalf infringed Plaintiffs' copyright rights as alleged above;

B. That this Court, pursuant to RCFC 65 and 17 U.S.C. § 502, permanently enjoin the United States and its contractors, affiliates, agents, servants, employees, attorneys, representatives, successors and assigns, and all others in active concert or participation with them from infringing Plaintiffs' copyright rights, including but not limited to the further unauthorized use of TETRA or any derivative work created therefrom;

C. That this Court, pursuant to RCFC 65(f) and 17 U.S.C. § 503, enter an order directing the United States Marshals Services to: (a) impound all copies of TETRA and any and all derivative works thereof in possession of the United States and/or its contractors, affiliates, agents, servants, employees, attorneys, representatives, successors and assigns, and all others in active concert or participation with them during the pendency of this lawsuit, and (b) upon final hearing of this case, to destroy or otherwise dispose of those copies.

D. That this Court order an accounting to determine the full extent of unauthorized TETRA installations and actual, direct, and other compensatory damages to be awarded to Plaintiffs as a result of the United States' infringement and violations;

E. That this Court award to Plaintiffs such actual, direct, and other compensatory damages as they shall prove at trial against the United States that are adequate to provide Plaintiffs with reasonable and entire compensation pursuant to 28 U.S.C. § 1498(b) and 17 U.S.C. § 504(b), including but not limited to, damages amounts for unpaid license fees, lost

       profits, development costs, and all other damages and losses resulting from the Government's infringement of Plaintiffs' intellectual property, together with interest.

F.    That this Court order an award to Plaintiffs of their costs and reasonable attorneys' fees; and

G.    That this Court grant such other and further relief as the Court may deem proper and just.

                                               Respectfully submitted,

                                               */s/ Sathya S. Gosselin*
                                               Walter D. Kelley, Jr.
                                               wkelley@hausfeld.com
                                               Sathya S. Gosselin
                                               sgosselin@hausfeld.com
                                               Sarah R. LaFreniere
                                               slafreniere@hausfeld.com
                                               HAUSFELD LLP
                                               1700 K Street, NW, Suite 650
                                               Washington, DC 20006
                                               Telephone: (202) 540-7200
                                               Facsimile:  (202) 540-7201

                                               *Counsel of Record for Plaintiffs 4DD Holdings, LLC, and T4 Data Group, LLC*

Dated:  March 14, 2016

**CERTIFICATE OF SERVICE**

I certify that on March 14, 2016, a copy of the foregoing FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT was filed electronically with the Clerk of Court using the ECF system, which will send notifications to all ECF participants.

                Respectfully submitted,

By: /s/ Sathya S. Gosselin
     Sathya S. Gosselin
     sgosselin@hausfeld.com
     HAUSFELD LLP
     1700 K Street, NW
     Suite 650
     Washington, DC 20006
     PH:  (202) 540-7200
     FX:  (202) 540-7201

*Attorney of Record for Plaintiffs 4DD Holdings, LLC, and T4 Data Group, LLC*